UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LONDON

| | |
|---|---|
| CHICAGO TITLE INSURANCE COMPANY,<br><br>    PLAINTIFF<br><br>v.<br><br>GAMBREL & WILDER LAW OFFICES, PLLC<br>SERVE VIA REGISTERED AGENT:<br>1222 ½ N. Main Street, Suite 2<br>London, KY 40741<br><br>JOHN M. GAMBREL<br>SERVE:<br>1222 ½ N. Main Street, Suite 2<br>London, KY 40741<br><br>R. SCOTT WILDER<br>SERVE:<br>1222 ½ N. Main Street, Suite 2<br>London, KY 40741<br><br>    DEFENDANTS. | CASE NO.   6:23-cv-00169-KKC<br><br>*Electronically Filed* |

**COMPLAINT**

Plaintiff, Chicago Title Insurance Company, for its Complaint against Defendants, Gambrel & Wilder Law Offices, PLLC, John M. Gambrel, and R. Scott Wilder states:

**PARTIES**

1. Chicago Title Insurance Company ("CTIC") is a corporation organized under the laws of Florida and with a principal place of business at 601 Riverside Avenue, Jacksonville, Florida 32204.

2. Gambrel & Wilder Law Offices, PLLC ("Gambrel & Wilder") is a professional limited liability company organized under the laws of Kentucky and with a principal place of business at 1222 ½ N. Main Street, Suite 2, London, KY 40741.  The

members of Gambrel & Wilder are John M. Gambrel and R. Scott Wilder. Gambrel & Wilder is a citizen of Kentucky as all of its members are citizens of Kentucky.

3. John M. Gambrel is an individual citizen of Kentucky and member of Gambrel & Wilder Law Offices, PLLC whose office is located at 1222 ½ N. Main Street, Suite 2, London, KY 40741.

4. R. Scott Wilder is an individual citizen of Kentucky and member of Gambrel & Wilder Law Offices, PLLC whose office is located at 1222 ½ N. Main Street, Suite 2, London, KY 40741.

### JURISDICTION AND VENUE

5. This is a civil action for declaratory judgment, breach of contract, and indemnification. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of different states and because the amount in controversy, $2,028,779.31, exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Gambrel & Wilder because it has its principal place of business in Kentucky, and is organized under the laws of Kentucky, making it "at home" in Kentucky.

7. This Court has personal jurisdiction over John M. Gambrel because he is a Kentucky citizen.

8. This Court has personal jurisdiction over R. Scott Wilder because he is a Kentucky citizen.

9. The United States District Court for the Eastern District of Kentucky is the proper venue for this action under 28 U.S.C. § 1391(b)(1) & (2) because it is the judicial

district in which all Defendants reside, and is the judicial district in which a substantial part of the events or omissions giving rise to CTIC's claims occurred.

10. Venue is also proper in this Court pursuant to the Agency Agreement between CTIC and Gambrel & Wilder, which provides that "Issuing Agent and Guarantors hereby consent to and submit to the jurisdiction of any court (Federal or State) having a situs in the State of Kentucky for purposes of adjudicating any and all disputes and claims arising out of or relating to this Contract." (Agency Agreement, attached hereto as Exhibit A, ¶ 18.)

## STATEMENT OF FACTS

### THE AGENCY AGREEMENT

11. CTIC incorporates by reference each and every allegation contained in paragraphs 1 through 10 of this Complaint.

12. This is an action for declaratory judgment, breach of contract, and for contractual indemnity.

13. CTIC is licensed to underwrite policies of title insurance throughout the United States, including in the Commonwealth of Kentucky, and provides its services on a nationwide basis via a network of agents.

14. On January 16, 2001, Gambrel & Wilder became an Issuing Agent of CTIC "for the promoting and transacting of [its] title insurance business for all Counties in the State of Kentucky." (Exh. A ¶ 1.)

15. The parties' Agency Agreement provided that Gambrel & Wilder were permitted to "validate, countersign, issue and deliver commitments, policies and endorsements" on CTIC's behalf. (*Id.* ¶¶ 1, 20.)

16. The Agency Agreement also placed certain express duties on Gambrel & Wilder including the duty to "[r]eceive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of [CTIC]." (Exh. A ¶ 4(B).)

17. In agreeing to act as CTIC's agent, Gambrel & Wilder explicitly contracted that it "shall be liable and agrees to indemnify and to save harmless [CTIC] for all attorney's fees, court costs, expenses and loss or aggregate of losses resulting from" the following:

- "Failure of Issuing Agent to comply with the terms and conditions of this Contract or with the rules, regulations or instructions given to Issuing Agent by Principal." (Exh. A ¶ 8(A).)

- "The issuance of title assurances which contain errors or omissions, caused by employee's abstracting, examination of title, including but not limited to examination of surveys, or failure of any title assurance to accurately reflect the correct description of the real property involved or record title thereto, so long as said error in description is discoverable by an accurate search of the public records." (*Id.* ¶ 8(B).)

- "The issuance of title assurances which contain errors or omissions, that were disclosed by the application, the examiner's report, or which were known to the Issuing Agent, or in the exercise of due diligence should have been known to Issuing Agent." (*Id.* ¶ 8(C).)

18. As Guarantors of the Agency Agreement, John M. Gambrel and R. Scott Wilder agreed that "[a]ll of the obligations of Issuing Agent are hereby guaranteed by Guarantors and Guarantors shall be jointly and severally liable to Principal therefore in the event Issuing Agent fails to perform." (*Id.* ¶ 1.)

**GAMBREL & WILDER'S TITLE INVESTIGATION AND ISSUANCE OF TITLE INSURANCE**

19. On August 15, 2008, CTIC tasked Gambrel & Wilder with investigating the record title of a 2,753.773 acre tract of real property located in Bell County, Kentucky (the

"Property"), of which title was purportedly held by Diversified Investments & Development, LLC ("Diversified").

20. Instead of conducting a complete and thorough title investigation, however, Gambrel & Wilder only investigated the title for the Property from the date of the most recent mortgage forward based on title work prepared by another company. Consequently, Gambrel & Wilder only reviewed the chain of title for no more than the six-year period of 2002-2008. It made no effort to confirm the tract's chain of title prior to 2002.

21. Gambrel & Wilder subsequently produced a title opinion to CTIC in which it reported that the purported owner of the Property in 2002, Diversified, remained the owner of the Property as of August 2008. The firm was paid $1,000 for its work.

22. In September 2008, CTIC assigned Gambrel & Wilder additional title investigative work regarding the same Property purportedly owned by Diversified. Specifically, Gambrel & Wilder was assigned the task of conducting a "fee search" and a "mineral search" on the tract in contemplation of issuing a title insurance policy to insure a mortgage, which Diversified would grant to East River Opportunity Fund, LLC ("East River").

23. Despite being paid an additional $4,000 for conducting the fee search and $2,500 for conducting the mineral search, Gambrel & Wilder actually performed only the mineral search. It conducted no additional "fee search" of the Property's chain of title and instead only had an associate attorney "double check" the firm's original title opinion, which only encompassed the years 2002-2008.

24.     Despite being paid nearly four times the amount it had been paid to conduct the prior title investigation, Gambrel & Wilder failed to investigate the Property's chain of title for any period of time preceding 2002.

25.     Based on its investigative work, Gambrel & Wilder, as agent for CTIC, issued a title commitment (the "Commitment") to the proposed insured lender, East River, which noted that the Property was owned by Diversified.

26.     In September 2008, Diversified executed a mortgage ("Insured Mortgage") in favor of East River, which purported to encumber the Property.

27.     East River paid the applicable premium and Gambrel & Wilder issued a $2,500,000.00 lender's title insurance policy (the "Policy"), based upon the Commitment, to East River on or about October 16, 2008, which insured the validity, enforceability, and priority of the Insured Mortgage against the Property. The Policy was underwritten by CTIC.

28.     In issuing the Policy, Grambel & Wilder expressly affirmed, as CTIC's agent, that the Insured Mortgage was insured against loss or damage sustained or incurred by, among other situations, "[t]itle being vested other than as stated" in the Policy's attached Schedule A, which identified the Property as having been titled in full to Diversified. (East River Title Insurance Policy, attached hereto as Exhibit B ¶ 1.)

**GRAMBEL & WILDER ERRORS UNCOVERED**

29.     In 2013, Diversified defaulted on the Insured Mortgage.

30.     In preparation for the commencement of foreclosure proceedings, East River discovered that Diversified actually did not hold title to approximately 463.67 acres of the Property purportedly encumbered by the Insured Mortgage as insured by CTIC. East River

further discovered that Diversified had not held title to the approximately 463.67 acres at the time that Gambrel & Wilder issued the Policy on or about October 16, 2008.

31. Despite having been paid to perform two separate investigations of the Property, Grambel & Wilder failed to uncover that Diversified did not hold title to the entirety of the 2,753.773 acres of the Property.

32. In 2018, East River filed suit against CTIC in Cook County, Illinois Circuit Court seeking recovery for its losses. CTIC filed counterclaims against East River seeking declaratory relief and rescission and/or reformation of the Policy issued by Grambel & Wilder.

33. On October 27, 2022, East River and CTIC settled the Illinois suit. The settlement required CTIC to pay East River $1,695,000.00.

34. CTIC incurred $333,779.31 in attorneys' fees and expenses in defending the Illinois suit, which it would not have incurred but for Gambrel & Wilder's insufficient title investigations.

**CTIC'S DEMAND FOR INDEMNITY AND GAMBREL & WILDER'S BREACH OF CONTRACT**

35. On March 28, 2023, CTIC mailed a demand letter to Gambrel & Wilder via certified mail requesting that the firm provide indemnification for its $2,028,779.31 total loss caused by the firm's negligence in failing to exercise due care as CTIC's agent. (March 28, 2023 Demand Letter, attached hereto as Exhibit C.)

36. Despite its contractual obligation to indemnify CTIC for its losses, fees, costs, and expenses, however, Gambrel & Wilder has refused the demand. (Exh. A ¶ 8.)

## COUNT 1
### DECLARATORY JUDGMENT

37. CTIC incorporates by reference each and every allegation contained in paragraphs 1 through 36 of this Complaint.

38. An actual and justiciable controversy exists between the parties as to whether Gambrel & Wilder, as CTIC's contractual Issuing Agent, is contractually required to indemnify and to save harmless CTIC for all attorneys' fees, court costs, expenses and loss or aggregate of losses resulting from Gambrel & Wilder's failure to properly examine the chain of title of the Property and subsequent issuance of the Policy identifying Diversified as the Owner of the Property, despite Diversified having conveyed 463.67 acres of the Property to third parties prior to the execution and recordation of the Insured Mortgage.

39. An actual and justiciable controversy also exists between the parties as to whether John M. Gambrel and R. Scott Wilder, as contractual Guarantors of Gambrel & Wilder, are required to indemnify and save harmless CTIC for all attorneys' fees, court costs, expenses and loss or aggregate of losses resulting from Gambrel & Wilder's failure to properly examine the chain of title of the Property and subsequent issuance of the Policy identifying Diversified as the Owner of the Property, despite Diversified having conveyed 463.67 acres of the Property to third parties prior to the execution and recordation of the Insured Mortgage, to the extent CTIC cannot recover the full amount of its damages from Gambrel & Wilder.

40. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Fed. R. Civ. Pro. 57, CTIC requests that the Court expeditiously declare that Gambrel & Wilder are required to indemnify and save harmless CTIC for its attorneys' fees, court costs, expenses and loss or aggregate of losses, and that John M. Gambrel and R. Scott Wilder are required

to act as Gambrel & Wilder's Guarantors and indemnify and hold harmless CTIC for its attorneys' fees, court costs, expenses and loss or aggregate of losses if Gambrel & Wilder fail to indemnify and save harmless CTIC. The Court's declaration will confer certainty on the parties and serve the interests of justice.

## COUNT 2
## BREACH OF CONTRACT

41. CTIC incorporates by reference each and every allegation contained in Paragraphs 1 through 40 of this Complaint.

42. The Agency Agreement is a valid contract between CTIC and Gambrel & Wilder.

43. John M. Gambrel and R. Scott Wilder are Gambrel & Wilder's Guarantors under the Agency Agreement.

44. As set forth more fully in Paragraphs 14–18 above, the Agency Agreement provided that Gambrel & Wilder "be liable and shall indemnify to and agrees to indemnify and to save harmless [CTIC] for all attorney's fees, court costs, expenses and loss or aggregate of losses" resulting from:

- "Failure of Issuing Agent to comply with the terms and conditions of this Contract or with the rules, regulations or instructions given to Issuing Agent by Principal." (Exh. A ¶ 8(A).)

- "The issuance of title assurances which contain errors or omissions, caused by employee's abstracting, examination of title, including but not limited to examination of surveys, or failure of any title assurance to accurately reflect the correct description of the real property involved or record title thereto, so long as said error in description is discoverable by an accurate search of the public records." (*Id.* ¶ 8(B).)

- "The issuance of title assurances which contain errors or omissions, that were disclosed by the application, the examiner's report, or which were

9

known to the Issuing Agent, or in the exercise of due diligence should have been known to Issuing Agent." (*Id.* ¶ 8(C).)

(Exh A. ¶ 8.)

45.     As set forth more fully in Paragraphs 14–18 above, the Agency Agreement provided that Gambrel & Wilder were required to "[r]ecieve and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of the Principal." (*Id.* ¶ 4(B).)

46.     Gambrel & Wilder did not "receive and process [East River's] application[] for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of the Principal." (*Id.* ¶ 4(B).)

47.     Gambrel & Wilder failed "to comply with the terms and conditions of this Contract or with the rules, regulations or instructions given to Issuing Agent by Principal," which gave rise to its obligation to indemnify CTIC. (Exh. A. ¶ 8(A).)

48.     Gambrel & Wilder issued a "title assurance[] which contain[ed] errors or omissions, caused by employee's abstracting, examination of title, including but not limited to examination of surveys, or failure of any title assurance to accurately reflect the correct description of the real property involved or record title thereto, so long as said error in description is discoverable by an accurate search of the public records," which gave rise to its obligation to indemnify CTIC. (*Id.* ¶ 8(B).)

49.     Gambrel & Wilder issued a "title assurance[] which contain[ed] errors or omissions, that were disclosed by the application, the examiner's report, or which were

known to the Issuing Agent, or in the exercise of due diligence should have been known to Issuing Agent," which gave rise to its obligation to indemnify CTIC. (*Id.* ¶ 8(C).)

50. Gambrel & Wilder breached the Agency Agreement by failing to indemnify and to save harmless CTIC for its $2,028,779.31 in damages, consisting of attorneys' fees, court costs, expenses and loss or aggregate of losses caused by Gambrel & Wilder's conduct as described more fully in paragraphs 44–49 of this Complaint. (Exh. A ¶ 2(A).)

51. As set forth more fully in Paragraphs 14–18 above, John M. Gambrel, and R. Scott Wilder agreed to act as Guarantors of Gambrel & Wilder and to "be jointly and severally liable to Principal therefor in the event Issuing Agent fails to perform." (*Id.* ¶ 1.)

52. John M. Gambrel and R. Scott Wilder breached the Agency Agreement by failing to indemnify and to save harmless CTIC for its $2,028,779.31 in damages, consisting of attorneys' fees, court costs, expenses and loss or aggregate of losses as Gambrel & Wilder's Guarantor. (Exh. A ¶ 2(A).)

### COUNT 3
### CONTRACTUAL INDEMNIFICATION

53. CTIC incorporates by reference each and every allegation contained in Paragraphs 1 through 52 of this Complaint.

54. As set forth more fully in Paragraphs 14–18 above, the Agency Agreement provided that Gambrel & Wilder "be liable and shall indemnify to and agrees to indemnify and to save harmless [CTIC] for all attorney's fees, court costs, expenses and loss or aggregate of losses" resulting from certain Gambrel & Wilder errors and omissions. (Exh. A. ¶ 8.)

55. The damages, costs, expenses, and losses that CTIC suffered were a direct result of Gambrel & Wilder's insufficient title investigations.

56. Gambrel & Wilder has a duty to indemnify and to save harmless CTIC for its losses, including for its court costs and attorney's fees that have been paid as a result of Gambrel & Wilder's insufficient title investigation.

57. As contractual Guarantors of Gambrel & Wilder, John M. Gambrel and R. Scott Wilder have a duty to indemnify and to save harmless CTIC for its losses, including for its court costs and attorney's fees that have been paid as a result of Gambrel & Wilder's insufficient title investigation.

### PRAYER FOR RELIEF

Wherefore, CTIC respectfully requests:

1. Judgment in its favor;

2. An award against Defendants of actual and compensatory damages, in the amount to be established by the evidence;

3. Costs and attorney's fees incurred as a result of Defendants' actions;

4. Cost and attorney's fees incurred for this action;

5. Any and all pre-judgment and post-judgment interest at the rate applicable under the law;

6. For such other and further relief as this Court deems just and proper.

/s/ *Robin E. McGuffin*
Robin E. McGuffin
Kyle S. Schroader
STITES & HARBISON, PLLC
250 West Main Street, Suite 2300
Lexington, KY 40507
Telephone:  (859) 226-2300
Email:  rmcguffin@stites.com
kschroader@stites.com

Brian R. Pollock
STITES & HARBISON, PLLC
400 W. Market Street, Ste. 1800
Louisville, KY 40202
Telephone:  (502) 587-3400
Email: bpollock@stites.com

*Counsel for Chicago Title Insurance Company*